SARTAIN, Judge.
Plaintiff instituted this action on behalf of creditors of the bankrupt estate of defendant Jason Haynes Morgan to nullify as simulated sales the purported transfers by Morgan of two lots to his stepdaughter’s husband, defendant John P. Cryer. Defendants answered, alleging that, although the recited cash portions of the purchase price were not paid at the time the sales were passed, there was a mutual intent to transfer ownership, to discharge a prior obligation, to transfer the mortgage obligation on one of the lots and to secure future support to the Morgans by the Cryers, so that the acts were neither truly simulated sales nor donations in disguise.
The trial judge ruled in favor of the defendants, upholding the sales, and we affirm.
The plaintiff shows, and it is not denied, that the sales occurred on February 17, 1967, after a suit had been filed against Mr. Morgan on February 2 and service made on February 7, 1967. The two lots were situated on Loudon Lane in East Baton Rouge Parish and included a lot with a brick veneer house, in which Mr. and Mrs. Morgan were living at the time, and an adjacent lot with a frame house, which was used as rental property. The rental property was transferred by an act of cash sale with the purchase price recited to be $6,500.00. The brick house and lot were transferred by an act of sale with assumption of mortgage, reciting the cash portion of the price to be $4,342.71 and the balance of the mortgage indebtedness to be $1,657.29, payable in monthly installments of $50.00 each.
It is admitted that Mr. Cryer, the vendee, did not pay the recited sums of cash at that time but that he did assume the mortgage payments on the brick house and received the rent from the rental property. It is also admitted that the Morgans continued to live rent-free in the brick house for several months and perhaps a year after the sale, but that they then sold their furniture and bought a trailer in which they lived for perhaps another year. At that time Mr. Cryer began renting the brick house as well.
On February 18, 1969, Mr. Morgan filed a petition in bankruptcy and this action followed. Plaintiff-appellant contends that the above recited facts are sufficient to prove that the sales were simulated, that they resulted directly from the suit filed against Mr. Morgan and that the only motive was to place the property beyond the reach of Mr. Morgan’s creditors. Indeed, the close relationship between the parties, the absence of proof of cash payment, the existence of a suit against the vendor and the fact that the vendor remained in possession of the brick house after the sale are factors which create a presumption of simulation and the burden of proving otherwise is then upon the parties to the sale. C.C. Art. 2480.
Defendants-appellees contend that circumstances both before and after the sale are sufficient to rebut the presumption.
In 1958, Mr. Morgan suffered a stroke and was unable to work. Although the source of the funds is not clear, he purchased a lot in Pine Grove, St. Helena Parish, on which there was a delapidated shotgun house. Mr. Cryer decided to rebuild the house and later added two rooms. He supplied the necessary supervision and materials and the other labor was donated by Mr. Morgan’s stepson and nephew and by Mr. Cryer’s brother and a friend who did not previously know Mr. Morgan. Mr. Cryer was the only one who expended any money on the project.
Mr. Morgan executed a mortgage on the property in the amount of $2,200.00 but the $50.00 per month payments thereon were made from funds advanced by Mr. Cryer. The Cryers also advanced other funds to help the Morgans with their living expenses during the following years.
In September of 1963, the house burned and the Morgans received $5,000.00 under *768 a fire insurance policy and used the money as part of the purchase price for the brick veneer house and lot on Loudon Lane. Due to the fact that Mr. Morgan’s health had not improved, the Cryers continued to advance funds for support.
In October of 1965, Mr. Cryer borrowed $3,200.00 and gave $900.00 to Mr. Morgan to purchase a vacant lot adjacent to the brick house (the rental property referred to above), with the intent to construct a frame house on the lot which could be rented and used to help support the Morgans. Mr. Cryer found a house located in the proposed right-of-way of a highway and bought it for $200.00 to obtain usable lumber for constructing the rent house. As in the case of the Pine Grove house, Mr. Cryer supervised the work and bought the necessary materials and the labor was supplied by relatives and friends. The Morgans received the rent on the house but the Cryers continued to advance additional funds for their support.
In the fall of 1966, Mr. Cryer, who had been a construction superintendent for a Baton Rouge firm, decided to go into business for himself and contacted a bonding company. He was told that his financial statement was barely adequate and if he had any other assets he should also list them. Apparently, cash assets were preferable so he contacted a real estate agent for purposes of trying to sell both the lots on Loudon Lane. However, a willing buyer could not be found. The next best thing was to place the property in Mr. Cryer’s name and although, as mentioned above, the acts of sale were passed soon after suit was filed against Mr. Morgan defendants contend that the purpose of the transfers at that particular time was to increase Mr. Cryer’s bonding capacity. They recognized, however, that his substantial monetary interest in the property might be jeopardized as a result of any judgment that might result from the suit.
On April 17, 1967, the John P. Cryer Construction Company, Incorporated, was formed and has since proven to be successful.
The testimony in the record shows that the Morgans felt indebted to Mr. Cryer on account of prior services rendered and funds advanced in an amount of at least $14,000.00. It was also understood, although no written agreement to the effect was made, that Mr. Cryer would continue to contribute to the Morgans’ support as their needs might dictate and in fact checks were introduced into evidence showing that Mr. Cryer had paid Mr. Morgan at least $4,560.00 from 1967 to 1969.
It is also clear that the Morgans considered the advances to be loans which would be repaid when Mr. Morgan regained his health and could return to work. The fact that his condition did not improve and he later suffered heart attacks in 1968 and 1969 made this prospect rather hopeless but does not detract from the original intention to repay and the recognition of the indebtedness which Mr. Morgan sought to discharge, at least in part, by the transfers of the property.
Plaintiff-appellant contends that the prior services of and advancements by Mr. Cryer should be presumed to be gratuitous. However, we held in Succession of McKnight, 129 So.2d 573 (1st La.App., 1961), that any presumption that services rendered by children to their parents are gratuitous does not apply to money advanced by a son-in-law, as is Mr. Cryer in the instant case. The testimony in this record justifies a finding that there was a mutual intention and expectation to repay those advances. It is also clear that Mr. Cryer would continue to support the Morgans financially. Moreover, Mr. Cryer did assume the mortgage payments on the brick house and lot.
Under these facts, we find that there was a bona fide intention to transfer ownership in the property, which is not present in a truly simulated sale, and that Mr. Morgan intended to discharge a prior *769 obligation, to free himself of his mortgage obligation (although he had been making those payments with funds advanced by Mr. Cryer) and to secure the future financial support of Mr. Cryer. These elements result in classifying the contracts as onerous rather than gratuitous and defeat the claim that the sales were donations in disguise.
“In the final analysis, whether a contract is a donation or an onerous contract depends upon the determining motive that dominated the party. Basically a donation stems from an intent to give as opposed to an intent to secure something in return or to discharge an obligation, hence the statement that the cause of a donation is the animus donandi. Its legal character therefore depends upon its cause.” Smith, “A Refresher Course in Cause”, XII La.Law Rev. 2, 7; see also, generally, XXIII La.Law Rev. 416.
For the above and foregoing reasons, the judgment appealed from is affirmed, at plaintiff-appellant’s costs.
Affirmed.